## THE SILVIA.

(District Court, S. D. New York. January 4, 1904.)

1. COLLISION—STEAMER AND SAILING VESSEL CROSSING—INEFFICIENT LOOKOUT.
   Evidence considered, and held to show that a steamship was in fault for a collision with a crossing schooner at sea, in the night, for failing to maintain an efficient lookout.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellant.

Bowie, Notman, Joline & Mynderse, for the Silvia.

ADAMS, District Judge. This action arose out of a collision which occurred off the Rhode Island coast, about fifteen miles west of Gay Head, near midnight, New York time, on the 25th of March, 1903, between the schooner O. M. Marrett and the steamship Silvia. The schooner, about 92 feet long, was bound from Port Reading, New Jersey. The steamship, about 260 feet long, was bound from Hali-

fax to New York, with passengers and freight. The schooner was sunk and became a total loss, with her cargo of coal, the personal effects of the crew and some oil, etc., on board. The steamship was somewhat injured. The weather was ordinarily clear.

The schooner was sailing free, with all sails set and drawing. She was on the port tack, her booms well out to starboard and going 9 or 10 knots per hour. Her course was east by south ½ south. The wind was fresh from west north west to north west. The steamship was going at about the same speed as the schooner. Her course was west ¼ north by compass, equivalent to west magnetic.

The schooner claims, in her libel, that the steamship was first seen about ½ a point on the schooner's port hand, several miles distant, showing her green side light, which she subsequently changed to both side lights and then to the green alone again; that the schooner maintained her course and the steamship changed to port under a starboard helm; that the steamship came on and struck the schooner a heavy blow on the port bow by the cat head.

The steamship claims, in her answer, that she passed Vineyard Sound Lightship, about a mile to the southward; that when the vessels were about a half a mile apart, the green light of the schooner was seen about a point on the steamship's starboard bow; that the light was not of statutory brilliancy and could not be seen further away; that the steamship starboarded her helm and later hard-a-starboarded; that these provisions were sufficient to avoid collision if the schooner held her course; that, however, the schooner changed her course by porting her helm and shut in her green light to the steamship, exposing her red; that the steamship could not then avoid the collision, though orders were given to stop and reverse her engine, and the collision occurred by the vessels coming together at about right angles, the heading of the steamship being about southwest.

It is agreed that after the collision the vessels swung together, the schooner's port side, being on the starboard side of the steamship.

The testimony shows that with a total crew of six men, the schooner had three men on deck, i. e., the master, one man at the wheel and one on lookout forward. The steamship had a full crew. Her first officer was in charge of the deck. She had a man at the wheel on the bridge, a lookout stationed forward on the forecastle deck and an extra man on deck under the bridge. The master was in a room abaft the bridge, and came on the bridge just before the collision. He assisted the wheelsman in rolling over the wheel.

The testimony of the respective vessels is as much opposed as their pleadings and, in view of the conflict, it is not easy to determine the facts.

It appears that the steamship when first seen by those on the schooner, was about half a point on the schooner's port bow, at first showing to the latter her green light, then both lights, then shortly before the collision, the green one alone again, and at last, when in the jaws of the collision, the red alone. The witnesses also say that the steamship's light was from a half point on the port bow to about ahead. The schooner was yawing from half a point to a point. The

vessels came together at nearly right angles, the stem of the steamship striking the schooner's port bow, near the stem.

The steamship's green light was shown to the schooner for about ten minutes, while the vessels were approaching from a distance of about three miles, as estimated by the master of the schooner, who said that the vessels kept drawing together upon the same bearings. The testimony shows that the green light was partly shut out when the vessels were about two miles apart and until they were within a mile of each other, during which time, the red appeared fully.

The testimony of the wheelsman of the schooner was somewhat vacillating. He said in one place that he put the wheel to port, under the master's order. He subsequently retracted, however, and said that the master's words were directed to the steamship. Great stress is laid by the steamship upon this testimony, but while it tends to discredit the witness to some extent, it does not prove the steamship's contention of a change on the part of the schooner.

The steamship's witnesses say that the green light of the schooner was first seen, when she was about a half a mile away, over the steamship's starboard bow and that the vessels were then approaching green to green, but the navigating officer did not consider that there was a sufficient margin for safety and he ordered the steamship's helm to starboard and then hard-a-starboard. The contention is that if the schooner had maintained her course, there can be no doubt that the vessels would have gone clear with an ample margin.

A controlling feature of the case, in my opinion, is the admitted fact that at the time of the collision, the schooner's sails were still on the starboard side, which, it seems, and it was so testified, would have been impossible with the wind as it was, if the schooner had changed her course to south east, or in that vicinity, as claimed by the steamship.

The collision seems attributable to a defective lookout on the steamship. In excuse for approaching so close to the schooner, it is contended that the green light of the schooner was dim. I do not consider that the collision can be accounted for in that way. The red light was admittedly good and if the schooner's theory of the collision is correct, it was the red light that was important. Moreover, the green light had been inspected before the sailing of the schooner, and if it could be deemed necessary for the steamship's safe navigation, the evidence sufficiently shows its good condition.

The courses of the vessels were such that, assuming a collision approach, the schooner would naturally be showing her red light to the steamship and the latter be showing her green light to the schooner. This is more consistent with the schooner's contention than the steamship's.

I conclude that there should be a decree for the libellant, with an order of reference.